**Shane G. PARKES, et. al., Plaintiffs,**

v.

**COUNTY OF SAN DIEGO, et. al., Defendants.**

**No. 02CV1770 JAH(WMC).**

United States District Court, S.D. California.

June 23, 2004.

Paul W Leehey, Fallbrook, CA, for Shane G Parkes, Lisa M Parkes, Chloe Conyngham–Booth, a minor by and through her Guardian ad Litem, Holly M Parkes, a minor, by and through her Guardian ad Litem Craig Parkes, plaintiffs.

Deborah Anne McCarthy, County of San Diego Office of County Counsel, John J Sansone, Dep County Counsel, County of San Diego Office of County Counsel, William S Donnell, Deputy City Attorney, Office of the City Attorney Civil Division, San Diego, CA, for County of San Diego, by and through San Diego County Department of Health and Huamn Services, San Diego County Department of Health and Human Services, Roberto Calderon, Trudy Simoes, Diana Prince, William T Giddens, San Diego City of, Mary Gressel, Ramirez, Officer, Does, 1–100, inclusive, defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 44]

HOUSTON, District Judge.

### INTRODUCTION

Pending before the Court, is Defendants' motion for summary judgment. The motion was heard before this Court on April 2, 2004. After hearing argument by counsel, and a thorough review of the pleadings and exhibits filed, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

### BACKGROUND

This action arises from a report made to the San Diego County Health & Human Services Agency Child Abuse Hotline regarding Plaintiff Holly M. Parkes ("Holly"). On June 6, 2001, Holly, then four years old, told her teacher, Debbie Hare, her vagina was sore, because her daddy tickled her there. Ms. Hare made an audiotape of her conversation with Holly. On June 7, 2001, Dee Dee Smith, the director of Holly's pre-school, told Holly's mother, Plaintiff Lisa Parkes ("mother") about Holly's statements and played her the audiotape. Ms. Smith telephoned Child Protective Services ("CPS") and told the mother to return the next day to meet with someone from CPS. On June 8, 2001, Defendant Diana Prince, Protective Services Worker, went to Holly's school to conduct an investigation. After interviewing Holly and Plaintiff Chloe Conyngham–Booth ("Chloe"), Holly's six year old sister, and speaking with the mother, Prince took Holly and Chloe into protective custody. The children were taken to Polinsky Children's Center. Medical examinations were conducted on the children after their arrival.

The matter was transferred to Defendant Roberto Calderon, Court Intervention Worker, and a dependency petition was filed pursuant to California Welfare and Institutions Code § 300. Defendant Gertrude "Trudy" Simoes was Calderon's supervisor. A detention hearing was held on June 13, 2001. The judge found the initial removal was necessary and there was no reasonable means by which the children's physical or emotional health would be protected without removing them from the parents. The judge detained the children in Polinsky and gave the agency discretion to detain the children with a relative upon a favorable home evaluation. The maternal grandmother from New Zea-

land and Craig Parkes, a paternal uncle from San Diego, appeared at the hearing and volunteered as relative placements for the children. The mother agreed to allow evidentiary examinations. An evidentiary interview and medical exam were conducted on Holly at the Center for Child Protection at Children's Hospital on June 14, 2001. Holly and Chloe were placed in their home with their maternal grandmother on June 25, 2001. The petition was dismissed on July 25, 2001 and Plaintiffs agreed to enter into a Voluntary Case Plan. Plaintiffs moved to New Zealand on July 28, 2001.

On June 10, 2002, Plaintiffs filed a complaint in Superior Court alleging assault, battery, false imprisonment, intentional infliction of emotional distress, legal malpractice and violations of civil rights for the alleged unlawful taking, examinations and continued detention of Holly and Chloe. Defendant County of San Diego filed an answer and removed the action to the United States District Court for the Southern District of California on September 6, 2002. On October 17, 2003, Defendants County of San Diego, Prince, Calderon, Simoes and Giddens filed a motion for summary judgment.[1] On February 12, 2004, Plaintiffs filed an opposition. Defendants filed a reply on February 13, 2004. Plaintiffs filed objections to the reply on February 20, 2004. This Court heard oral argument on the motion on April 2, 2004. During the hearing, this Court granted Plaintiffs' request for leave to file a surreply. The matter was thereafter taken under submission.

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.1989). Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885, 110 S.Ct. 3177 (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With-

---

**1.** The matter was transferred to this Court and the motion was rescheduled to December 19, 2003. Upon stipulation the motion was continued to February 20, 2003. The hearing was rescheduled to April 2, 2004 on the Court's motion.

out specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW, Inc.,* 938 F.2d 986, 990–91 (9th Cir.1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987)(citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

## EVIDENTIARY ISSUES

Plaintiffs filed objections to Defendants' reply. Specifically, they object to the submission of the exhibits and declarations, an argument contained in the reply and specific provisions of the declarations.

### I. Motion to Strike Reply

■ Plaintiffs argue Rule 7.1(e)(3) of the Local Rules of Practice for the United States District Court for the Southern District of California does not permit a party to submit declarations and exhibits in support of a reply. Plaintiffs also argue the reply should be stricken, because Defendants raise a new argument. However, this Court granted Plaintiffs leave to file a surreply to address the issue and the surreply was filed with documents in support. Furthermore, the language of Local Rule 7.1(e)(3) does not specifically permit or prohibit the filing of exhibits and declarations in support of a reply. Accordingly, Defendants objections are overruled and motion to strike the reply is DENIED.

### II. Objections to Declarations

Plaintiffs also object to specific paragraphs of the declarations submitted in support of the reply. Specifically, they object to paragraph 6 of Richard Songer's declaration, paragraphs 3, 4, 5, and 7 of Karen Richter's declaration and paragraphs 2, 11, 12 and 13 of Deborah McCarthy's declaration.

■ Based upon the information contained in the extensive exhibits filed by the parties, the Court found it unnecessary to consider the objected to portions of the declarations in making its determination on the motion.[2] As such, the motion to strike portions of the Songer, Richter and McCarthy[3] declarations is DENIED as moot.

## DISCUSSION

Defendants seek summary judgment and assert (1) Defendants Prince, Calderon and Simoes are immune from suit under state law for all actions taken in connection with their investigation and the filing of the dependency petition, (2) Calderon's and Simoes' conduct in filing and prosecuting the dependency proceeding is privileged under state law, (3) the judge's findings at the detention hearing validate their conduct, (4) Plaintiff's cannot establish their legal malpractice claim against deputy public defender Giddens, because they have not designated an expert witness, (5) Defendants are entitled to qualified immunity under federal law, (6) Defendants Calderon and Simoes are entitled to absolute prosecutorial immunity under federal law for all activity relating to the dependency proceedings, (7) Plaintiffs fail

---

2. The declarations included information already contained in previously filed exhibits (e.g. depositions, court transcripts and orders). The declarations also included information not relevant to the Court's consideration of the motion.

3. Because the Court did not consider the objected to paragraphs of the McCarthy declaration, it is unnecessary to discuss the issue of counsel testifying as a witness. However, the Court will entertain argument on the issue should it arise in later proceedings.

to state a *Monell* claim against the County and (8) Plaintiffs cannot demonstrate a risk of irreparable harm in support of their request for injunctive relief.

## I. Estoppel or Preclusion based upon Juvenile Court Findings

■ In their reply, Defendants contend the juvenile court's finding at the detention hearing validate their conduct and shields them from liability. The judge found the initial removal of the children was necessary and continued care in the home would be contrary to the children's welfare. Defs' Exhs. J, K. Plaintiffs argue the judge's findings and order do not equate to collateral estoppel.

Collateral estoppel bars a party from relitigating issues resolved in a prior proceeding. The party asserting collateral estoppel must demonstrate (1) the issue necessarily decided at the previous proceedings is identical to the one sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceedings. *Pacific Lumber Co. v. California State Water,* 116 Cal.App.4th 1232, 11 Cal. Rptr.3d 378 (2004).

Defendants set forth no argument in support of their contention that the juvenile court's action in finding the initial removal necessary validates their action. They simply cite to *Jenkins v. County of Orange,* 212 Cal.App.3d at 285, 260 Cal. Rptr. 645, and *Doe v. Lebbos,* 348 F.3d 820, 827 (9th Cir.2003), without explanation. Neither case discusses or addresses collateral estoppel or issue preclusion.[4]

Plaintiffs argue that even if the issue of the detention is identical to that discussed by the juvenile court judge, the issue was not actually litigated and was not necessarily decided resulting in a final judgment on the merits. Restatement (Second) of Judgments § 27 states "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." California courts also utilize Restatement Second of Judgments when determining whether a party is precluded from relitigating an issue. *See Rice v. Crow,* 81 Cal.App.4th 725, 97 Cal.Rptr.2d 110 (2000); *Lumpkin v. Jordan,* 49 Cal.App.4th 1223, 57 Cal.Rptr.2d 303 (1996); *Branson v. Sun–Diamond Growers,* 24 Cal.App.4th 327, 29 Cal.Rptr.2d 314 (1994); *see also Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152 (9th Cir.2002). Plaintiffs assert although the juvenile court made a prima facie finding that the removal and detention of the children was necessary, it later issued an order dismissing the case upon the County's motion. As such, they argue, the finding regarding the necessity of the removal and detention was not necessary for the final disposition.

This Court finds the issue of fact sought to be precluded here was not determined

4. The California Appeals Court in *Jenkins* noted that the trial court's erroneous reliance on prior cases in making its ruling did not require reversal, if the ruling itself was correct. *Jenkins,* 212 Cal.App.3d at 285, n. 4, 260 Cal.Rptr. 645. In *Lebbos,* the Ninth Circuit mentions in a footnote that the dependency court notes the lack of efforts to retain the minor in the home was reasonable. The court in *Lebbos* did not find that the issue was resolved by the dependency court and therefore would not be disturbed. Moreover, the court did not rely on the dependency court's finding in determining whether the social worker's act of maintaining the minor in protective custody prior to the detention hearing was reasonable. Instead, the court reviewed the facts of the case to independently determine whether protective custody was reasonable.

by a final judgment. The inquiry concerning preclusion or estoppel must necessarily end here. Accordingly, Plaintiffs are not precluded from litigating the issue of whether the removal and detention of the children was proper.

## II. State Law Statutory Immunity

Defendants Prince, Calderon and Simoes assert they are entitled to statutory immunity with respect to the first, second, third and seventh causes of action pursuant to California Government Code § 821.6. They further argue discretionary immunity extends to social workers who investigate allegations of suspected child abuse pursuant to California Government Code § 820.2. Finally, Defendants maintain California Code § 820.21 does not apply.

Plaintiffs argue Defendants are not entitled to immunity, because their conduct falls under the exception to immunity set forth in section 820.21. They further argue that Defendant Prince's failure to leave the children with their mother and Defendants Calderon's and Simoes' failure to investigate the matter and failure to promptly investigate Craig Parkes and the maternal grandmother as a suitable placement were not discretionary acts but mandatory duties not afforded immunity under section 820.2.

### A. Law

■ "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov.Code § 821.6. The immunity also applies to allegations of negligence. *See Jenkins v. County of Orange,* 212 Cal.App.3d 278, 286, 260 Cal.Rptr. 645 (1989).

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov.Code § 820.2.

■ California Government Code § 820.21 provides that immunity for social workers does not extend to conduct that includes perjury, fabrication of evidence, failure to disclose exculpatory evidence and obtaining testimony by duress, if committed with malice. Malice is conduct intended to cause injury or despicable conduct that is carried on with a "willful and conscious disregard of the rights or safety of others." Cal. Gov.Code § 820.21(b).

### B. Analysis

### 1. Allegations

### a. Assault (First Cause of Action)

Plaintiffs allege Defendants caused Holly and Chloe fear of harmful contact by the detention and efforts to persuade them to falsely implicate their parents and acted with malice. Complaint at 11–12

### b. Battery (Second Cause of Action)

Plaintiffs allege Defendants, with intent and malice, made harmful contact with Plaintiffs Holly and Chloe while unlawfully detaining them. *Id.* at 13.

### c. False Imprisonment (Third Cause of Action)

Plaintiffs allege Defendants, with malice, unlawfully detained Holly and Chloe without evidence of imminent danger, without reasonable cause and without the consent of their parents from June 8, 2001 to July 25, 2001. *Id.* at 14.

### d. Intentional Infliction of Emotional Distress (Seventh Cause of Action)

Plaintiffs allege Defendants, with malice, engaged in outrageous conduct, including

unlawful detention, questioning, examinations, maliciously withholding exculpatory evidence, falsely reporting Plaintiffs Holly and Chloe alleged their parents abused them and failing to provide proper counsel. *Id.* at 23. Plaintiffs further allege Defendants intended to cause physical and emotional distress. *Id.* at 24. They maintain they suffered fright, nervousness, anxiety, worry, mortification, shock, humiliation and indignity. *Id.*

Defendants conduct in removing Holly and Chloe from their parents, interviewing them regarding the allegations, detaining them and reporting to the juvenile court judge were performed as part of their duty as social workers investigating the allegations of abuse and prosecuting the dependency action. Accordingly, they are entitled to statutory immunity unless the exception of section 820.21 applies and Defendants' conduct falls within the exception.

## 2. Applicability of Section 820.21

### a. Defendant Prince

■ Plaintiffs argue Prince removed the children without judicial authority and absent exigent circumstances. Plaintiffs maintain the basis for removal of the children was threat of serious bodily harm from the father and Prince did not believe the mother presented an immediate threat to the children. Even so, they argue, Defendant Prince did not discuss any alternatives to removal from the mother, prior to removing the children from her care (e.g. the father moving out of the home). The parties do not dispute there was no judicial authority to remove the children, but do dispute whether the situation qualified as an emergency. Defendants argue Plaintiffs do not provide any evidence that the children did not make the statements as reported by Prince, but merely argue Prince should not have believed the girls' statements.

Defendant Prince removed the girls from their mother after Holly reported that her father "tickled" her on her vagina and her mother knew about the "tickling." A review of Prince's deposition demonstrates she did not believe the mother presented a threat of serious bodily harm to Holly. Prince Depo. at 176–77, Plas' Exh. 1. However, when asked if she believed the mother presented a threat of serious bodily harm to Chloe, she responded "from the point of not protecting her, yes" and "if she was not going to act protectively, yes." *Id.* at 177. Prince also stated in a written report that the mother was very cooperative. Family Assessment Factor Analysis, Plas' Exh. 10 at 2, Prince Depo. at 164, Plas' Exh. 1. She reported that the reason the children were removed was because the mother denied any knowledge of the molest and she was not "comfortable the mother would be protective and avoid putting pressure on the two girls" before the evidentiary interviews. Transfer Summary, Plas' Exh. 11, Sexual Abuse Risk Assessment, Plas' Exh. 12; Delivered Service Log at 5, Defs' Exh. C.

Plaintiffs fail to set forth any facts demonstrating a genuine issue as to whether Defendant Prince engaged in perjury, fabrication of evidence, failure to disclose exculpatory evidence or obtaining testimony by duress. Accordingly, section 820.21 does not apply to Prince's conduct and she is entitled to immunity. The motion for summary judgment is GRANTED as to the first, second, third and seventh causes of action against Defendant Prince.

### b. Defendants Calderon and Simoes

Plaintiffs argue Calderon and Simoes failed to conduct an investigation prior to the detention hearing to determine whether continued detention was necessary. Plaintiffs also argue Defendants Calderon and Simoes failed to disclose exculpatory

evidence when they failed to notify the parents or the court that medical examinations taken at Polinsky were within normal limits, failed to provide the results of the evidentiary examination of Holly taken at Children's Hospital, and failed to inform the dependency court of the exculpatory testimony contained in the videotaped evidentiary interview of Holly.

Defendants argue there was no failure to disclose exculpatory evidence, because Plaintiffs' attorneys were aware of the information and could have informed the court about the information. They further argue the videotape and results of the medical examinations were not exculpatory.

### i. Pre-hearing Investigation

■ California Welfare and Institutions Code § 309 requires the social worker to investigate the circumstances of a child's detention and release the child unless there is an immediate and urgent need to continue detention and there are no reasonable means by which the child can be protected at home. Cal. Welf. & Inst.Code § 309(a)(2). Calderon did not believe the mother presented a risk of serious physical harm to the children. Calderon Depo. at 194, Plas' Exh. 2. He determined it was not safe to leave the children with their mother based on Prince's report, not on his own investigation. *Id.* at 219. There is no evidence to support the allegation that Calderon engaged in perjury, fabricated evidence, failed to disclose exculpatory or obtained testimony by duress. Plaintiffs have not met its burden that the complained of acts were committed with a "willful and conscious disregard of the rights and safety of the alleged victims".

As such, Section 820.21 does not apply and Defendant Calderon is entitled to immunity with respect to the pre-hearing investigation. Defendant Simoes is entitled to immunity with respect to her actions taken as Calderon's supervisor during the pre-hearing investigation.

### ii. Disclosure of Information

■ A review of the exhibits demonstrates neither the Jurisdiction/Disposition Report nor the addendum prepared for the hearing by Defendants Calderon and Simoes mentioned the results of the physical examinations conducted at Polinsky and at Children's Hospital.[5] Defs' Exh. T, Plas' Exh. 16. According to the medical record from the Polinsky exam, Holly's external genitalia and hymen appeared normal. Polinsky Medical Record—Admission Physical Exam, Plas' Exh. 13. However, the report notes that an evidentiary examination was needed. *Id.* The report containing the results of the evidentiary examination performed at Children's Hospital shows the physical findings for the genitals, hymen and anus were all normal. Plas' Exh. 18 at 13. The report also notes, however, that a "normal exam does not prove or disprove sexual abuse." *Id.* During the videotape interview of Holly, she states her father tickled her "by her private part," with his fingers on top of her underwear. Plas' Exh. 19 at 4.

The reports prepared for the Jurisdiction/Disposition hearing also lack any mention that Holly was seen by her doctor for her bladder problems two days prior to the disclosure. The report states that Dr. Neil Goldfinger, Holly's physician, was consulted regarding Holly's medical needs. Defs' Exh. T at 8, 10. However, Calderon admits he never contacted the doctor to

---

5. The Jurisdiction/Disposition hearing was set for July 3, 2001, but was continued to July 25, 2001. *See* Juvenile Court Minute Order, Def's Exh. P. At the hearing held on July 3, 2001, the judge ordered County Counsel to provide the father's counsel the audio tape of Holly's interview and all reports. *Id.*

obtain information. Calderon Depo. at 150, Plas' Exh. 2.

The parents, through their attorneys, were able to inform the juvenile court judge themselves that Holly was seen by her doctor two days prior to the incident. There is no evidence that Plaintiffs were aware of the results of the Polinsky or Children's Hospital examinations prior to the Jurisdiction/Disposition hearing so as to allow them to inform the judge. However, there is evidence that Defendant Calderon was aware of the examination results and failed to inform the juvenile court judge. Calderon stated he spoke with County Counsel regarding the Parkes case following the July 3, 2001 hearing and they agreed to dismiss the petition because, although the children were consistent with the allegations, there were no physical findings supporting the allegations. Calderon Decl. ¶¶ 14, 15, 16.

This Court finds there is a genuine issue of material fact as to whether Defendants Calderon and Simoes failed to disclose exculpatory evidence and whether their conduct was committed with a "willful and conscious disregard for the safety" of the children when they failed to inform the court of the examination results. Accordingly, Defendant Calderon and Simoes are not entitled to statutory immunity for their alleged failure to disclose exculpatory evidence.

## III. California Civil Code § 47

■ Defendants argue Calderon and Simoes'[6] conduct is privileged pursuant to California Civil Code § 47 and, therefore, they are immunized from tort liability. Plaintiffs argue section 820.21 explicitly re-

moves the immunity of social workers, "notwithstanding any other provision of law."

"[C]ommunications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin v. Green*, 4 Cal.4th 1187, 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993). The privilege extends to communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365 (1990). The principal purpose of the privilege is to provide "litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Id.* (citations omitted). Another purpose "is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." *Id.* at 213, 266 Cal.Rptr. 638, 786 P.2d 365. (Citing *Imig v. Ferrar* 70 Cal.App.3d 48, 55, 138 Cal.Rptr. 540 (1977)).

Upon the Court's inquiry at oral argument on this matter, counsel explained they were unaware of any case dealing with what effect, if any, section 820.21 has on the litigation privilege. This Court's own research revealed no such case. Plaintiffs argue that if section 47 was able to shield defendants from liability despite the language of section 820.21, it would render the section a nullity. This Court finds Plaintiff's argument persuasive. The

6. Although Defendants also argue Defendant Prince's conduct is protected by the litigation privilege, the Court will not address the issue, in that the Court has determined Prince is entitled to statutory immunity for the same claims. Additionally, the Court will not address whether Defendant Calderon and Simoes conduct during the pre-hearing investigation is protected by the litigation privilege as the Court has determined they are entitled to statutory immunity as to that claim.

language of section 820.21 includes "notwithstanding any other provision of law" which makes it clear that section 47 cannot be interpreted without consideration of section 820.21. Additionally, according to the legislative history, section 820.21 was enacted to resolve the lack of effective check on social workers power and absolute immunity. A. 1355, 1995 Sess., at 2 (Ca.1995). The author of the bill recognized the need to protect children from harm caused by an individual acting under the authority of the state or county. *Id.* As such, allowing section 47 to protect social workers from suit in all instances would negate the purpose of section 820.21. As discussed above, there is a genuine issue of material fact as to whether Defendants Calderon and Simoes failed to disclose to the court exculpatory evidence with malice. Therefore, they are not entitled to summary judgment based on the section 47(b) litigation privilege.

## IV. Legal Malpractice (Fourth Cause of Action)

 Defendants argue Plaintiffs have not designated an expert on the issue of legal malpractice against Defendant Giddens. Defendants maintain Plaintiffs' counsel advised Defendants' counsel of his plans to dismiss the claim, but has not signed the proposed stipulation. Plaintiffs failed to address the claim in their papers, but notified the Court at the hearing of their intention to proceed with the malpractice claim. Accordingly, the motion is DENIED without prejudice as to the legal malpractice claim.

## V. Section 1983 (Fifth Cause of Action)

Plaintiffs allege Defendants detained, threatened, examined and searched the children in violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

7. Plaintiffs also refer, without specifics, to evidence that ultimately led to dismissal of the

## A. Absolute Prosecutorial Immunity

 Defendants assert Defendants Calderon and Simoes' actions in authorizing the juvenile petition and its prosecution are entitled to absolute immunity as to the fifth cause of action alleging a violation of the Fourth and Fourteenth Amendments pursuant to 28 U.S.C. § 1983.

### 1. Legal Standard

 "Social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa County Depart. of Social Svcs.*, 812 F.2d 1154, 1157 (9th Cir.1987). Only those functions recognized as absolutely immune at common law are entitled to absolute immunity. *See Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir.2003) ("We must now recognize that beyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists"). Discretionary decisions and recommendations are not functionally similar to prosecutorial or judicial functions and are not entitled to absolute immunity. *Id.* at 898. The official claiming absolute immunity has the burden of identifying "the common-law counterpart to the function that the official asserts is shielded by absolute immunity." *Id.*

### 2. Analysis

Plaintiffs allege Defendants Calderon and Simoes used false and fabricated evidence, and failed to disclose exculpatory evidence during the dependency proceedings. Complaint at 18. They contend the videotaped interview of Holly was exculpatory and Defendants withheld the results and made misrepresentations as to Holly's accusations.[7] They argue Defendants are

dependency action. According to this

not entitled to absolute immunity for making false submissions and failure to disclose exculpatory evidence to the juvenile court.

Plaintiffs further contend Defendants' action in misrepresenting Holly's disclosure to the dependency court was comparable to a prosecutor fabricating evidence prior to an arrest and filing false reports, conduct the Ninth Circuit held was not entitled to absolute immunity in *Milstein v. Cooley,* 257 F.3d 1004 (9th Cir.2001). In *Milstein,* the court found the prosecutor's action in knowingly obtaining false statements prior to the empaneling of the grand jury was not entitled to absolute immunity. *Milstein* 257 F.3d at 1011 (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 275, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)(finding prosecutor not acting as advocate when he fabricated evidence prior to the empaneling of the grand jury.)). The *Milstein* court further found the attorney's conduct in filing false crime reports was not that of an advocate, but of a complaining witness, and therefore not entitled to immunity. *Id.* The court, however, found the attorney's efforts to obtain an indictment before a grand jury were entitled to immunity. *Id.* at 1012. This Court finds that Defendants' alleged misconduct does not parallel the attorney's action in *Milstein.*

More on point with the facts of this action is the case of *Doe v. Lebbos,* 348 F.3d 820 (9th Cir.2003). In *Lebbos,* a father and his children sued the county and county social workers under section 1983 alleging the social worker failed to investigate exculpatory evidence and fabricated evidence. *Id.* The court held the social worker was entitled to absolute immunity, because she engaged in the conduct as part of her initiation and pursuit of dependency proceedings. *Id.* at 826.

■ Here, any alleged misrepresentations to the dependency court and failure to disclose exculpatory evidence by Defendants Calderon and Simoes occurred during the dependency proceedings. As such, Defendants Calderon and Simoes are entitled to absolute immunity for their actions in prosecuting the case in accordance with *Lebbos.*[8] The motion for summary judgment as to the section 1983 claims against Defendants Calderon and Simoes for their actions in failing to disclose exculpatory evidence and misrepresentations to the court is GRANTED.

## B. Qualified Immunity

Defendants Prince, Calderon and Simoes argue Plaintiffs' claim for violation of their Fourth and Fourteenth Amendment rights to be free from unlawful search and seizure and interference with their familial

Court's review of the record, Calderon agreed to dismiss the dependency proceedings because, although Holly was consistent with her accusations of molest, there were no physical findings supporting the molest and Holly had an extensive medical history related to her vaginal area, bladder and kidneys; no admissions were made;, there were no other witnesses; there was no family history of molest; and the parents psychological evaluations were within normal limits. Calderon Decl. ¶ 16.

8. In a footnote, Plaintiffs suggest *Lebbos* is distinguished from this case because the

Court did not take into consideration section 820.21 and failed to analyze state law and its impact on immunity. Plaintiffs argue the *Miller* court recognized that state law may differ as to the functions performed by social workers and California has limited immunity by instituting section 820.21. This Court finds Section 820.21 does not effect federal immunity principles available to social workers for conduct undertaken in the initiation and pursuit of dependency proceedings in a section 1983 claim. Moreover, the Court notes *Lebbos* was decided subsequent to the enactment of section 820.21.

relationship are barred as they are entitled to qualified immunity.

### 1. Legal Standard

 Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Determining whether an official is entitled to qualified immunity requires a two-step approach. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, the court must consider whether, "taken in the light most favorable to the party asserting injury", the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201, 121 S.Ct. 2151. Second, the court must consider whether the right was clearly established. *Id.* The inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

### 2. Analysis

Plaintiffs allege Defendants violated their Fourth and Fourteenth Amendment rights when they removed the children, continued to detain the children without proper or just cause and/or authority, and subjected Holly and Chloe to physical examinations without consent or authority. Complaint at 18.

### a. Defendant Prince

Plaintiffs argue Defendant Prince violated their Fourth and Fourteenth Amendment rights when she removed and detained Holly and Chloe without due process and without exigent circumstances.

### i. Was a Constitutional Right Violated?

 Parents and children have a liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process except in an emergency. *Wallis v. Spencer,* 202 F.3d 1126, 1138 (9th Cir.2000). Officials may remove a child from her parents without judicial authorization only if they have "reasonable cause to believe the child is in imminent danger of serious bodily injury." *Id.* "Summary judgment in favor of the defendants is improper unless, viewing the evidence in the light most favorable to the plaintiffs, it is clear that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated." *Id.*

 Defendant Prince had no judicial authority to remove the children. Both children disclosed inappropriate touching of Holly by the father. There were no allegations of molest or abuse by the mother. Although Defendant Prince stated she believed the mother presented a risk of serious bodily harm to Chloe if she would not be protective, she also stated she did not believe the mother presented a risk to Holly, who made the accusations. Viewing the facts in the light most favorable to Plaintiffs, the Court cannot find that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated.

### ii. Was the Right Clearly Established?

 The Court must now consider whether it would be clear to a reasonable officer that Prince's conduct was unlawful under the circumstances of the case.

Plaintiffs argue that Prince's action in removing the children from the mother's custody was not reasonable, because she did not believe there was a threat of serious bodily harm from the mother. Defen-

dants argue it was reasonable for Prince to remove Holly and Chloe from their mother's custody when Holly reported that her mother knew about the molest but did not stop her father.

Prince's notes reflect she was told Holly was seen by a doctor two days before the initial contact regarding Holly's allegations. Prince Depo. at 187, Plas' Exh. 1. The notes referred to a bladder infection and that Holly had only one kidney. *Id.* Additionally, Ms. Smith, the school administrator, told Prince Holly had frequent bladder infections and she only has one kidney. Delivered Service Log, Defs' Exh. C at 1. Defendants claim Ms. Smith also explained Holly has lots of stories, but opined that the story about her father was different. *Id.* However, Ms. Smith testified that she explained Holly had lots of stories, but never opined the story about her father was different. Smith Deposition, Plas' Exh. 33 at 79. Ms. Smith also recalls telling Defendant Prince that Ms. Hare, the teacher who recorded the conversation with Holly, can blow things out of proportion. *Id.* at 73. Ms. Smith also questioned whether the tape was guided or leading and shared this concern with Defendant Prince. Prince listened to the audiotape of the conversation between Holly and her teacher about her father touching her. Delivered Service Log, Def's Exh. C at 2. Prince interviewed Holly and Holly explained her father touched her with his fingers, and they went inside and it hurt a lot. *Id.* at 3. Holly also said she told her mom and her sister Chloe saw her father touching her. *Id.* She also said Chloe told her the father used to touch Chloe. *Id.* Prince interviewed Chloe and Chloe denied the father touched her, but said he would put her on the bed and tickle her all over. *Id.* at 4. When asked if her mother ever said anything about the father touching Holly, Chloe responded, "well sometimes if he's touching her in private part, I mean if he is about to touch her in her private

parts, my mother will come in and say something to distract him. Like if they're on the couch and he's been doing it, I mean about to touch it, my mother will come in and say, 'I need to take Holly to pre-school' or 'Holly needs to go to bed now' or something else like that to take Holly out of the room." *Id.* Prince determined there was a immediate threat of serious bodily injury to Holly and possibly Chloe by the father. Prince Depo. at 176, Plas' Exh. 1. However, she did not believe the mother presented an immediate threat of bodily injury to Holly. *Id.* at 176–77. Prince believed the mother presented an immediate threat of bodily harm to Chloe, "if she was not going to act protectively." *Id.* at 177. Defendant Prince stated the reason to temporarily remove the children was because the mother denied any knowledge of any molest. Transfer Summary, Plas' Exh. 11. Prince also reported that she was concerned the mother would not be protective and might put pressure on the girls before they could set up unbiased evidentiary interviews. Delivered Service Log, Exh. C at 5.

■ Because it is unclear whether Prince believed the children were at risk of an immediate threat of serious bodily harm if left with mother, there is a genuine issue of material fact as to whether a reasonable social worker could believe her action in removing the children from the mother's custody was lawful. Furthermore, whether reasonable cause to believe exigent circumstances existed is generally a question of fact for the jury. *Mabe v. San Bernardino County, Dept. of Social Svcs.,* 237 F.3d 1101, 1108 (9th Cir.2001) (citing *Wallis,* 202 F.3d at 1138). As such, Defendant Prince is not entitled to qualified immunity and the motion as to the section 1983 claims against Prince is DENIED.

### b. Defendants Calderon and Simoes

Plaintiffs argue Calderon and Simoes kept the children in detention because they wished to protect the integrity of the interviews of the children, although they were required to return the children if there was no immediate and urgent need for continued detention.

### i. Pre-hearing Detention

### aa. Was a Constitutional Right Violated?

■■■■■ California Welfare and Institutions Code § 309 requires the social worker to investigate the circumstances of the child's detention and the worker must release the child to her parent's custody unless there is an immediate and urgent need to continue detention and there are no reasonable means by which the child can be protected in her home. Cal. Welf. & Inst.Code § 309(a)(2). Plaintiffs argue Defendants Calderon and Simoes continued the detention of the children prior to the hearing without conducting an investigation or evaluating whether there were reasonable means by which to protect the children while in their mother's custody. Calderon Depo. at 133, Plas' Exh. 2. Accordingly, in the light most favorable to Plaintiffs, the Court cannot find that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated.

### bb. Was the right clearly established?

The Court now considers whether it would be clear to a reasonable officer that the pre-hearing detention was unlawful in the situation confronted by Calderon and Simoes.

■■■■ Plaintiffs allege Calderon and Simoes admitted there was no threat of serious bodily injury by mother, therefore their decisions to detain the children from the mother was not reasonable.

Defendant Calderon testified that based on the facts received from the previous worker, the mother was not a safe person with whom to leave the children. Calderon Depo. at 134, Plas' Exh. 2. He also testified that prior to detention he did not believe the mother presented an immediate risk of serious bodily injury to Holly or Chloe. Id. at 194. On June 11, 2001, Calderon received a telephone call from Chloe's father who said he was very concerned about his child. Delivered Service Log, Defs' Exh. C at 6, 127. On June 12, 2001, Defendant Calderon telephoned Chloe's father and asked if he had any prior concerns about Shane Parkes's parenting or behavior and he said he did not. Id. Calderon believed the father presented an immediate risk of serious bodily harm to Holly. Calderon Depo. at 193, Plas' Exh. 2.

There is a genuine dispute as to whether a reasonable social worker could believe continuing the detention of the children prior to the hearing was reasonable when Defendant Calderon did not believe mother demonstrated a immediate risk of serious physical harm to the children. As such, Defendants Calderon and Simoes are not entitled to qualified immunity. Accordingly, the motion for summary judgment as to the section 1983 claim involving the continued detention of the children is DENIED.

### ii. Medical Examinations

Defendants argue the forensic interviews and physical exams are no longer at issue, because Plaintiffs conceded that consent was given. They further argue Judge Moskowitz issued an order stating whether the parents consented to the medical exams was not at issue. Plaintiffs argue the order deals solely with the evidentiary examination not the examinations conducted at Polinsky.

In his order denying Defendant's motion to add third party defendants, Judge Moskowitz ordered stricken from the complaint the provisions "that directly and indirectly alleges that Holly and Chloe were interviewed and examined by defendants without the parents' knowledge and consent", after finding Plaintiffs repudiated the allegation that the defendants conducted the forensic examination of Holly and the evidentiary interviews of both Holly and Chloe without their consent. Order at 4. Upon a plain reading of the order, this Court finds Judge Moskowitz order strikes all provisions regarding the forensic examination of Holly and the evidentiary interviews of both Holly and Chloe. Accordingly, the allegations surrounding the Polinsky medical exams are still at issue. However, the only section 1983 allegations specific to Defendants Calderon and Simoes with respect to medical examinations are the forensic examination performed at Children's Hospital. That allegation is no longer at issue. Thus, Plaintiffs fail to demonstrate a constitutional right was violated by Defendants Calderon and Simoes. Defendants are entitled to qualified immunity on this claim.

## VI. Monell Claim (Sixth Cause of Action)

Plaintiffs allege Defendant County violated their Fourth and Fourteenth Amendment rights. Defendants argue the County cannot be held liable based on conduct of their employees, unless the civil rights violations stem from enforcement of a municipal policy or custom. Defendants argue Plaintiffs failed to identify a policy, custom or practice that deprived them of their constitutional rights and, merely, set forth conclusory allegations that policies exist.

### A. Legal Standard

A municipality may be held liable for violations of civil rights caused by a policy or practice. *Monell v. New York City Dept. of Social Svcs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to avoid summary judgment, a plaintiff need only show that there is a question of fact regarding whether there is a city custom or policy that caused a constitutional deprivation. *Wallis*, 202 F.3d at 1135. To establish liability, the plaintiffs must show that (1) they were deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to the constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Mabe* 237 F.3d at 1110–11 (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996)).

### B. Analysis

In the complaint, Plaintiffs allege a number of policies or customs in support of their claim against the County. However, Plaintiffs address only four in their opposition to the motion for summary judgment. Because the Plaintiffs have set forth no evidence to support the alleged policies not addressed in their opposition, Defendants' motion is GRANTED as to those claims. The Court will only address those claims set forth in Plaintiffs' opposition. Plaintiffs contend the evidence demonstrates the County has the following policies:

(1) removal and continued detention of children based upon the parents' failure to admit the unproven abuse allegations;

(2) removal and detention of minor children without a judicial order even in the absence of exigent circumstances;

(3) physical examination of minor children, without judicial order, exigent cir-

cumstances or notification to parent; and

(4) prohibiting parents to be present at physical examinations.

### 1. Children are Removed and Detained base upon a Parent's Failure to Admit Unproven Allegations

■■ Plaintiffs argue that the County has a policy of requiring the non-offending parent to admit allegations to prevent removal of the children, which is deliberately indifferent to their constitutional rights. Defendants argue the County does not require the non-offending parent to admit abuse, but does require the parent establish she will be protective.

When discussing the mother, Defendant Prince testified that "there had to be some resolve to the fact that her statements were in total contradiction to what her daughters said and both her daughters indicated she knew." Prince Depo. at 194, Defs' Exh. Z. Defendant Simoes testified that it was not a policy, practice or procedure that a parent had to admit the child's disclosures before having the child returned to them. Simoes Depo. at 283, Defs' Exh. AB. She further testified that a mother's denial of knowledge of an alleged molest is not a sole factor for removal. Smylie Depo. at 38, Defs' Exh. AC. However, Plaintiffs demonstrate the mother would have to accept the disclosures "to some extent" to prevent the girls' removal. Calderon Depo. at 128, Plas' Exh. 2; *See also* Smylie Depo. at 29, Plas' Exh. 4. (The admission of the non-offending parent that the offending parent committed the acts accused of is part of the criteria for deciding whether to remove a child). Plas' Exh. 28 at 2. Additionally, Renee Smylie testified that the non-offending parent's admission had been a criteria in determining whether to remove the child during the fifteen year period she was with the agency. Smylie Depo., Plas' Exh. 4 at 31. Furthermore, the Child Welfare Services

Initial Case Plan includes objectives that mother listen to and show acceptance and support of the disclosure made by her child. Plas' Exh. 29 at 2.

This Court finds there is a genuine issue as to whether the County had a policy of detaining children based upon a parent's failure to admit unproven allegations in violation of the plaintiffs' constitutional rights. Accordingly, the motion is DENIED as to this alleged policy.

### 2. Removal and Detention without a Court Order and absent Exigent Circumstances

■■ As discussed above, there is evidence that the County had a policy of removing children from the custody of the non-offending parent based solely upon her failure to admit allegations of abuse. The evidence demonstrates that the County considers a parent's failure to admit the veracity of allegations as an emergency warranting removal of the child, in that the parent will not be protective if she does not accept the disclosures to some extent. If the County is ultimately found to have a policy to remove a child from her parents' custody based upon the failure to admit unproven allegations in violation of constitutional rights, it follows that the County has a policy to remove a child absent exigent circumstances. Accordingly, Defendants are not entitled to summary judgment as to this alleged policy.

### 3. Conducting Physical Examinations without a Court Order, Exigent Circumstances or Notification to the Parents

■■ Children entering Polinsky are subjected to a medical examination within 24 hours of their arrival. Graff Depo., Plas' Exh. 5 at 41. Parental consent is not obtained, instead the doctor uses a "general consent order" issued by a Superior

Court Judge on August 27, 1998. *Id.* at 52. Pursuant to the order, "in situations where (1) a child is taken into temporary custody by the Health and Human Services Agency ('HHSA') of the County of San Diego, and (2) the parents or the guardian of the child cannot be located to obtain their consent for medical care," the Health and Human Services Agency may conduct a physical examination on infants or pre-verbal children if there is no medical information and the child appears to be in need of medical treatment. Order Authorizing Health Assessments and Immunizations Prior to Detention Hearing and Filing of Petition under Welfare & Institutions Code § 300, Plas' Exh. 15 at 1. The general consent order does not authorize an examination of Holly and Chloe because neither was an infant or pre-verbal at the time of the examination and their mother's whereabouts were known to obtain consent for medical care. In fact, the mother was present when the children were admitted to Polinsky.

Defendants do not dispute that children are subjected to a physical examination upon arrival at Polinsky without parental consent or notification. They however, argue the "health assessments" are reasonable.

### a. Fourteenth Amendment Violation

 The right to family association, embodied in the Fourteenth Amendment, "includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis* 202 F.3d at 1141. Defendants make no argument regarding the violation of Plaintiffs' fourteenth amendment rights. Accordingly, Defendants are not entitled to summary judgment as to Plaintiff's Fourteenth Amendment claims that Defendants conducted physical examinations without court orders, exigent circumstances or notification to the parents.

### b. Fourth Amendment Violation

 In addition to the Fourteenth Amendment violation, Plaintiffs assert violations of the Fourth Amendment. Medical examinations are intrusions that trigger the Fourth Amendment. *See Yin v. State of Cal.,* 95 F.3d 864, 870 (9th Cir. 1996). Defendants argue that to the extent Plaintiffs contend the examinations violated their Fourth Amendment rights, the issue should be analyzed under the "special needs" doctrine.

 In limited circumstances, a search not supported by a warrant or probable cause may still be constitutional pursuant to the "special needs" doctrine. *New Jersey v. T.L.O.,* 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackman, J., concurring); *Henderson v. City of Simi Valley,* 305 F.3d 1052, 1056–57 (9th Cir.2002). The doctrine applies when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement of the Fourth Amendment impracticable. *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (citing *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). In cases where the "special needs" doctrine applies, the court uses "a balancing test that weighs the intrusion of the individual's interest in privacy against the 'special needs.'" *Ferguson v. City of Charleston,* 532 U.S. 67, 78, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001). If upon a review of the specific facts of a case, a court finds special needs exist, *and* the needs make the warrant and probable cause requirement impracticable, the court applies the balancing test. *Henderson* 305 F.3d at 1057.

 There is no clear authority on the applicability of the "special needs" doctrine to an action involving a medical examination of minors without knowledge or con-

sent of their parents. The Ninth Circuit has held that "[m]edical examinations and medical tests that are not conducted as part of a criminal investigation are generally subject to the balancing test." *Yin*, 95 F.3d at 869 (citing *Vernonia*, 515 U.S. at 653, 115 S.Ct. 2386; *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 618–21, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989)). However, the cases cited by the Ninth Circuit differ from the case at bar, in that they involved compelled consent rather than no consent. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir.2003) (involving medical examinations of pre-school age children without parental consent finding the Supreme Court cases which applied the "special needs" doctrine involved extraction of consent through a threatened withholding of a benefit, rather than lack of consent.). Defendants invite this Court to accept dicta in Dubbs in support of their contention that the "special needs" doctrine applies. However, the court in Dubbs made no such finding. Regardless, assuming but not deciding that the "special needs" doctrine applies, the intrusion does not survive the balancing test utilized in "special needs" cases for the following reasons.

### a. Intrusion into Privacy

Medical examinations conducted at Polinsky include an assessment by a nurse who performs "a general once-over, height, weight, vital signs" and determine whether the child is in need of immediate medical attention. Graff, Depo., Plas' Exh 5 at 42, Defs'Exh. AD at 42; *see also* Polinsky Children's Center, Initial Nursing Admission Notes for Holly and Chloe, Plas' Exhs. 13, 14. The children are also sub-jected to a physical examination by a pediatrician or nurse practitioner that includes an examination of the external genitalia, hymen and rectum, and pelvic examinations. Graff Depo., Plas' Exh. 5 at 45—46, Defs' Exh. AD at 92; *see also* Initial Nursing Admission Notes for Holly and Chloe, Plas' Exhs. 13, 14.

 This Court finds a medical examination that includes a pelvic examination and inspecting a child's external genitalia, hymen and rectum is significantly intrusive.[9] Holly and Chloe have a legitimate expectation of privacy in not being subjected to a medical examination without their parents' consent. *See Yin* 95 F.3d at 870–871.

### b. County's Interest

Defendants assert the medical examinations are necessary to insure children entering Polinsky are not in need of medical care and do not present a risk of harm to other children. Although the nature of the County's interest in protecting the health of the children in Polinksky is important, it does not outweigh the invasive nature of the medical examinations performed without consent when the parent is available to authorize it. Defendant is not entitled to summary judgment as to this policy.

### 4. Parents are not Permitted to be Present at the Examinations

 Parents and children have a protected liberty interest in having the parents present with the children when they receive medical attention. *Wallis* 202 F.3d at 1142 ("interest in family association is particularly compelling at such times, in part because of the possibility that a need to make medical decisions will arise, and in part because of the family's

---

9. Defendant's contention that the examination takes less than one minute (*see* Reply at

12) does not effect the intrusive nature of an examination of genitalia.

right to be together during such difficult and often traumatic events."). It is undisputed that the non-offending parent is not permitted to be present at physical examinations conducted by the agency. Graff Depo., Plas' Exh. 5 at 53; Smylie Depo., Plas' Exh. 4 at 106. Accordingly, the motion is DENIED as to this policy.

## VII. Injunctive Relief (Eighth Cause of Action)

Plaintiffs seek an order prohibiting Defendants from:

(1) failing to establish and follow policies mandated by the United States Constitution as to the questioning, detention and examination of minor children;

(2) from failing to properly supervise employees as to their compliance with the principals mandated by the Fourth and Fourteenth Amendments; and

(3) from failing to implement and establish a policy of prompt, truthful and unbiased reporting in the investigation or prosecution of dependency matters.

Complaint at 25–26.

Defendants argue Plaintiff fails to demonstrate immediate threat of irreparable harm, because they no longer live in the County's jurisdiction.

"The requirements for the issuance of a permanent injunction are 'the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.'" *American–Arab Anti–Discrimination Comm.*, 70 F.3d 1045, 1066–67 (9th Cir.1995)(quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1322 (9th Cir.1985), modified, 796 F.2d 309 (9th Cir.1986)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

Plaintiffs allege ongoing violations by the defendants and maintain they are entitled to an evidentiary hearing on the matter. They, however, fail to set forth any evidence demonstrating a risk of "immediate irreparable injury" or continuing adverse effects. Accordingly, Plaintiffs' claim for injunctive relief is DISMISSED.

## CONCLUSION AND ORDER

IT IS HEREBY ORDERED Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The motion is **GRANTED** as to the following:

(A) the first, second, third and seventh causes of action against Defendant Prince;

(B) the first, second, third and seventh causes of action against Defendant Calderon and Simoes *as to the pre-detention hearing investigation;*

(C) the fifth cause of action against Defendants Calderon and Defendant Simoes *for their actions in failing to disclose exculpatory evidence and misrepresentations to the dependency court, and subjecting the children to physical examinations;*

(D) the sixth cause of action against Defendant County for the following alleged policies:

(1) detaining children without a finding of imminent danger of serious physical injury;

(2) questioning and/or examining children without exigent circumstances

(3) prohibiting parents from being present during questioning;

(4) detaining children and not returning them after the basis for detention is negated;

(5) using trickery, duress, fabrication and/or false testimony or evidence and in failing to provide exculpatory

evidence in preparing and presenting reports and court documents to the court;

(6) failing to provide adequate, competent and appropriate counsel to represent the interest of parties in juvenile dependency proceedings;

(E) the eighth cause of action for injunctive relief.

2. The motion is **DENIED** as to the following:

(A) the first, second, third and seventh causes of action against Defendant Calderon and Defendant Simoes *for failure to disclose exculpatory evidence to the dependency court;*

(B) the fourth cause of action for legal malpractice;

(C) the fifth cause of action against Defendant Prince;

(D) the fifth cause of action against Defendant Calderon and Defendant Simoes *for the continued detention of the children;*

(E) the sixth cause of action as to the following policies:

(1) removing and detaining children based upon a parent's failure to admit unproven allegations;

(2) removal and detention of minor children without a judicial order even in the absence of exigent circumstances;

(3) conducting physical examinations without a court order, exigent circumstances or notification to the parents;

(4) prohibiting parents' presence at physical examinations;

IT IS FURTHER ORDERED Plaintiffs' request to strike is **DENIED as moot.**